The first case this morning is 523-0041 People v. Davis. Arguing for the appellant is Ryan Wilson. Arguing for the appellee is Nicholas Atwood. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is allowed to record these proceedings today. Good morning, counsel. How are you all? Morning, your honor. Doing well, thank you. Good morning, your honor. We are down one staff member in Madam Clerk's office, so she's flying solo today. So we're going to make sure we've got everything set before we get rolling. It looks like we've got our timer. Mr. Wilson, are you ready to proceed? I am, your honor. Then go right ahead. Thank you. May it please the court, counsel. Good morning, your honors. My name is Ryan Wilson, and I represent Dennis Davis on behalf of the Office of the State Appellate Defender. I plan to primarily focus my argument today on the ineffective assistance of counsel claim involving Kenesha Cox, and I'd also like to touch on the Brady claim if I have time, but I'm more than happy to address any of the court's questions, including questions regarding the procedural posture of this case. The appellate court has already found in its most recent decision that the evidence against Dennis Davis was not overwhelming. It made that finding in part after noting that Roderick Dickerson, Dennis's co-defendant, was acquitted following a bench trial, and that many of the state witnesses changed their statements over time. It also observed that Colton Green's statements implicating Dennis in the shooting were undermined by alibi evidence. And now that we've had an evidentiary hearing, it's even clearer that Dennis didn't receive a fair trial. In order to discuss that, I have to briefly talk about the timeline of this case. The evidence established that two men walked toward Joel Shoulder's house at 1130 at night wearing dark clothing and having facial hair. Both men were described to be African American. At approximately 1146, Deputy Owens saw a Jeep driving with only its running lights on down the street, and he pulled that Jeep over. Dennis Davis was in that Jeep, and the officer's dash cam recorded his interaction with Mr. Davis, who was wearing a bright orange plaid shirt, had facial hair, seemed very calm. The deputy searched Dennis's vehicle, didn't find a gun, didn't find black clothing, didn't find any evidence indicating that Dennis participated in a shooting. In fact, there is no physical evidence implicating Dennis in this case. And as a result, at trial, the state had to make a very narrowly tailored argument that in the course of a little over 15 minutes, Dennis fled the scene of the shooting, removed his black clothing, put on the plaid shirt, discarded the black clothing, discarded the gun, got in his Jeep, and drove to the location approximately five minutes away where he was stopped by the deputy. And in response, in closing argument, defense counsel made a statement that I think embodies the ineffectiveness in this case. Defense counsel told the jury in response to the state's argument regarding these 15 minutes that Dennis would have been more lucky had he been pulled over farther from the scene of the shooting because it would have left him a shorter period of time to do all the things the state said he had to do. Dennis didn't need luck. He needed an effective attorney. His attorney had subpoenaed Kenesha Cox for trial. He knew that Kenesha would testify that at approximately 1120, Dennis arrived at her house to pick up a vehicle and that they talked for 10 to 15 minutes before Dennis left. Kenesha Cox had the alibi evidence that counsel lamented having to the jury. And he knew that Kenesha would support Dennis's defense. He, however, did not call her as a witness. When this issue was examined by the circuit court at the evidentiary hearing, the court said, in hindsight, we can look at it and say the defendant was convicted based on defense counsel's decision not to call Kenesha Cox. Yet the court deferred to counsel's decision not to call her and found that it did not indicate ineffective assistance of counsel. Now, importantly, in this case, the standard is the Strickland standard. In order to show prejudice, we only have to show that the error that counsel committed undermined the confidence in the verdict. And where the appellate court has already said that the evidence was not overwhelming in this case and listed a litany of ways in which the state's case suffered from various weaknesses, the failure to call Kenesha Cox was a significant error that impacted Dennis's case. The jury did not have an opportunity to know that he was somewhere else farther south of where he was stopped for the traffic infraction at the time that the shooting allegedly occurred. Now, defense counsel did say that he wasn't sure if Kenesha was that reliable of a witness, but he didn't explain why he thought that she might not be reliable. And notably, Kenesha testified at the evidentiary hearing in this case. The state had an opportunity to cross-examine her and probe why she might not be a reliable witness. Maybe she knew Dennis. Maybe there was some reason that she didn't appropriately remember what happened on the night of the shooting. The state didn't even ask that. It had its chance to establish it, and it didn't even try. So the record that we have here is that Kenesha Cox would have testified that Dennis was with her at the time of the shooting, and obviously he cannot be at the same place or in two different places at once. I also point this court to the King case that's been cited in the briefs that is very similar to this case, both procedurally and factually, where defense counsel didn't call an alibi witness, and therefore the alibi wasn't presented to the jury, and the court found that the evidence was not overwhelming. It has some startling parallels to Dennis's case. Not only, and I should also add, the state in its brief while discussing this issue notes that though defendant argues Cox's testimony would have placed him away from the scene at the time of the shooting, that was a matter for the jury to determine. Dennis is asking that he have that opportunity. The evidence in this case is not overwhelming. There's significant weaknesses with the state's case, and with every hearing, with every stage, every appeal in this case, that evidence gets far weaker. Given the significant questions in this case, Dennis would ask that his case is remanded for a new trial. So the jury has an opportunity to hear from Kenesha Cox, to hear all of this relevant evidence, and determine whether or not Dennis should be serving 50 years of his life in prison when his co-defendant was acquitted at a bench trial. Not only was Dennis denied the effective assistance of counsel, but the justice system failed him in a second way. The state has a continuing duty to provide updated information about the case and about witnesses to the defense. It should produce accurate information to the kind of one of the underlying themes of Brady, is that all parties should be on a level playing field. And that playing field was not level in the instant case. Initially, when after the shooting, police questioned Joel Scholder and asked him who was present in your at your house at the time of the shooting. He listed off a bunch of people. Demuriel Cunningham was not one of them. Demuriel was one of the state's main witnesses who identified Dennis and who has since recanted his testimony. There, I think it would be accurate to say, have been questions about whether Demuriel was actually in Scholder's house from the beginning of this case. And Joel Scholder didn't name Demuriel when they asked him who was present. After Demuriel was arrested and he claimed that he indeed was at Joel Scholder's house, they went back to Joel Scholder and said, tell us again who was at your house. And Joel Scholder listed a number of people and excluded Demuriel's name. At that point, the state said, well, Demuriel says he was at your house. And Joel Scholder, knowing that sometimes Demuriel did come to his house, said, well, if Demuriel says he was there, I suppose he was there. However, the report that the state disclosed to the defense said that when they wouldn't talk to Joel Scholder, he volunteered that Demuriel was at his house. That is not accurate. And defense counsel considered that report, considered the state's discovery when evaluating whether Scholder should be called as a witness in this case. Scholder has a written statement where he conveyed to Roderick Dickerson that Demuriel, in fact, wasn't at his house. He would have been another witness to provide powerful evidence that undermined the state's case, showing that one of their key witnesses, Demuriel Cunningham, who again, there are questions regarding whether he was actually present at the scene anyway, but this would be definitive evidence that he indeed was not there. And it actually gets worse because the state subpoenaed Joel Scholder for trial. And in the days leading up to trial, they wouldn't talk to him. And Joel Scholder told the state that if was called as a witness, he would not say that Demuriel was at his home. The state sent an email to the state's attorney of the county saying that Joel Scholder had said that he would not testify that Demuriel was at his home, but didn't tell defense counsel. Defense counsel didn't know that a witness that was sitting in the county jail that would support Dennis's defense had told the state that Demuriel was not at his home. These are key errors that have denied Dennis Davis a fair trial. And just as the state mentioned in its brief regarding Kenesha Cox, these are matters that the jury is entitled to hear, and they have not had that opportunity yet. So for those reasons, and for all the reasons set in Dennis's brief, we would ask this court to remand Dennis's case for a new trial, so that we can make sure that justice has been served. We can make sure that Dennis has received a fair trial. Thank you. If there are no further questions. Thank you, counsel. Justice Moore or Justice McKinney, do you have any questions before we move on to Mr. Atwood? No questions. All right. Thank you, Mr. Wilson. Obviously, you'll have your time for rebuttal. Mr. Atwood, if you're ready, go right ahead. Thank you, Your Honor. Good morning, Your Honor's counsel. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. There are three issues before the court today, but I'll primarily be focusing on the remand issue as well as addressing some of the arguments defendant has made in his reply brief and throughout his argument. The first issue the people have raised is regarding whether the trial order from the 4th District Appellate Court that remand called for an evidentiary hearing on defendant's ineffective assistance of counsel claims. And although there was a slight adjustment in the procedure back in the trial court, that is precisely what defendant received. However, defense counsel and defendant raised an additional actual innocence claim, which, as this court knows from his decision in People v. Teal, that cannot be done in the context of crankle remand. You can only raise the issues that were already before the court with regard to the ineffective assistance of counsel claim. And so it appears from the record that the parties agreed that they would skip the first and second stages in the Post-Conviction Hearing Act and proceed directly to an evidentiary hearing where defendant was represented by counsel. They presented their evidence. They presented witnesses. They cross-examined. They completed in a full-fledged evidentiary hearing before the court ruled on the merits of the actual claim and the ineffective assistance of counsel claims. Now, interestingly, defendant seems to claim that he was somehow prejudiced by this procedure. But in fact, the standard of review is the same. Defendant bears the same burden in both contexts, whether it be crankle or whether it be post-conviction. And in fact, he asserts prejudice on behalf of the state, which I'm not sure that defendant would even have standing to do where he says that the state missed out on filing a motion to dismiss at the second stage. But that being said, that didn't prejudice the defendant. In fact, what we have here is a situation where if defendant was going to complain about this procedure, he actually invited this error by acquiescing and agreeing to this procedure. And in fact, it is the only party harmed by this procedure was the state, where the state's attorney agreed to bypass not one but two different opportunities for dismissal in order to have this evidentiary hearing. This is a classic promissory estoppel invited error situation where the state relied on defendant's agreement to its detriment. So defendant cannot now claim on appeal that this was error. So this court should review this under a third stage procedure and consider that in its ruling when determining the evidentiary value of the hearing that defendant had. In his reply brief, defendant argued that trial counsel essentially rewrote the Post-Conviction Hearing Act by agreeing to this procedure. However, skipping stages in the Post-Conviction Hearing Act borders on routine for a number of different reasons. In my research, I found four or five cases where the state agreed to skip the first stage or the second stage and proceed to evidentiary hearings. People v. Pabello in the dash u, which was an actual innocence claim on remand. People v. Hodden back to twenty twenty twenty three at first zero nine two three nine three. And very interestingly, people v. Burgess one seventy six ILL dot 2D 289. The Supreme Court remanded a case for a determination of whether the defendant was on psychotropic drugs during his trial. So it was a specific limited purpose for remand on remand. The trial court had that hearing and then they also conducted a fitness hearing to determine whether or not that had an impact on his ability to participate. And the Illinois Supreme Court essentially applied a harmless air standard, finding that though it went beyond the scope of the remand, there was no it was an acceptable procedure because the defendant was represented. He was prepared for the hearing. He fully participated and presented evidence. That's exactly what we have in this case. So really, there's no situation in which the trial court's procedure here should be considered an error, should be reversed for any reason. And so this should be considered his one chance post conviction. Turning to the second issue regarding Kenesha Cox's imperfect alibi witness defense. I think it's very important that we remember the context of these ineffective assistance of counsel claims when we're in the appellate court. Sometimes we have a tendency to look at things from a very academic viewpoint, but we have to remember this is not done through the lens of hindsight. We are looking at trial counsel decisions at that time and how those facts may play in front of a jury. And what we know is that defense counsel said that he had some reliability issues with Kenesha Cox. We also know why he had those reliability issues because her criminal history was disclosed to him as part of the witness disclosures. And in that criminal history, as I appended to the people's brief, she was convicted of attempt to obstruct or destroy evidence under subsection A of that statute. Subsection A involves the destruction, altering, concealing, disguising of physical evidence, planting false evidence, or furnishing false information. Now we argued that she had, this is a crime of dishonesty. And while it has not been held to be that by a court, imagine how that plays in front of a jury when you're trying to put up the one person who can conceivably be an alibi witness. And it's even an imperfect alibi witness at that. Of course, the state is going to probe this on cross-examination. They're going to bring out all of these facts, including whatever specific instances that she did to be convicted of this crime. And so the fed is trying to say this trial strategy. This is absolutely trial strategy, which witnesses to present are a matter of trial strategy. And if she's put on the stand, the jury hearing that particular fact was not argued at the hearing, but counsel said that there were reliability issues with that witness, but they did not say what specifically caused it to be reliable, but we know judicial notice allows us to put this before the court. So if we imagine a scenario where you rule in defendant's favor on this, it goes back down for a new trial. Canisha Cox testifies, all of this is going to be admissible and the state's going to be allowed to probe it because it goes directly to her credibility as a witness. And all this is going to do is make it look like a reasonable inference for the jury that she assisted. She gave him a getaway vehicle. She allowed him to change the clothes. She did all of these things and in fact was involved. That's how the state will argue it without question. And the facts certainly create a reasonable inference for that. So this is clear trial strategy. What was the extent of their relationship? They didn't, I don't recall the exact probing of whether they were in like a relationship. I mean, she would testify he was with her. I don't know what the basis for that was, but again, she said that he was there to borrow her vehicle, I believe, which after the commission of a crime could certainly be looked at in more than one way is, you know, inferencing of defendant's guilt and trying to get away. It's also important to note all of these locations were all within five or six minutes of where the crime occurred. So it's not like we had to deal with a lengthy period of time away from where the scene was. Additionally, defense counsel stated that the reason he went with the officers, the video version was he had, you know, an imperfect alibi regarding time, but he had the defendant on body camera being pulled over by a police officer, not wearing the clothes that were identified by witnesses, having facial hair, which didn't match the description provided by one of the witnesses. So clearly, if you've got to choose between someone convicted of aiding and abetting crime versus indisputable video evidence during a traffic stop, you have to figure how is that going to play in front of the jury, and neither was a perfect alibi. So I think this is reasonable because just because the defendant was not found innocent doesn't mean that this isn't a good strategy. It just didn't work in the end. And I think it's also important to note, you know, these other issues raised regarding witness credibility. There were all sorts of witness credibility on both sides, but the overlying theme here is that there was a threat against Greene that he needed to recant his testimony when he had placed defendant, you know, with the guns and with his co-defendants prior to the crime. We had multiple people recanting, and defendant even pointed out in his reply brief that perhaps Scholder was recanting because of a potential threat of violence from Demariel because he was in a murder, which he was ultimately never convicted of, and the state dropped the charges, not in relation to his testimony in this case, but perhaps because there was no evidence to support them. But the fact remains, there were threats against potential witnesses here, and there was a lot of recanting of testimony. But what is true, if we look at the testimony that we got, looking at Demariel, looking at Johnny Taylor, looking at Shakia, all of those witnesses were what happened. And Demariel's initial testimony established that he was at the scene of this crime. He saw the individuals coming around the side of the house. He saw multiple firearms, including a big gun and a small gun, which would match the calibers. They had different sounds when they were fired. He talked about bullets whizzing by his ears, and we know that there was bullets that went through the window that he said he looked through. We know that the curtains were parted in the middle so that he could see the shooting happening in the front. We know that he said that Freedom Cunningham was present. We have multiple witnesses testifying to various different factors that were all in common in this case. And though there was ultimately recanting later, it's not a stretch of the imagination to believe that those things were being recanted on purpose because of possible threats in the background. And briefly, just to touch on the Brady issue, the state maintains that that was not Brady material. Defense counsel knew that had said that Demariel was not present. It was part of his 413b disclosures, and the state had no duty to tell him that, okay, this shoulder's testimony is flip-flopped. The jury is the one who determines the credibility of the witnesses, not the state. And defense counsel already had that knowledge, so there is no Brady violation. And with that, if there are no further questions, the people would ask this court to affirm the trial court's order. Thank you. Well, thank you, counsel. Justice McHaney or Justice Moore, do you have any final questions? No questions. No other questions. All right. Thank you, Mr. Atwood. Mr. Wilson, go right ahead with your rebuttal. Thank you, Your Honor. This case, for the past two remands, has been on direct appeal. The appellate court remanded this case for adhering into Dennis Davis's claims of ineffective assistance of counsel. It did not remand it for a post-conviction evidentiary hearing or post-conviction proceedings. Notably, the court even went so far as to note that because Crankle counsel had represented Dennis during the Crankle proceedings, counsel could stay on and continue representing Dennis. But there was never an initial post-conviction petition filed. There was never a finding of a gist, and there was never any leave for the appointment of post-conviction counsel in this case. The post-conviction petition is a creature of statute. The Post-Conviction Hearing Act sets out the requirements, the process that must be followed when adjudicating a post-conviction petition. There was no finding of gist. There was not even an initial post-conviction petition filed here. And again, there was never even an assignment of counsel to represent Dennis in this case. What appears to have happened is some confusion about the appellate court's order, and as a result, a claim of actual innocence was improperly added to Dennis's essentially Crankle argument. Now, the state is correct that when it comes to claims of ineffective assistance of counsel, the standards are the same, regardless of whether it's a Crankle evidentiary hearing or whether it is a third-stage post-conviction hearing. So Dennis has asked this court to go and review the ineffective assistance of counsel arguments that he's raised, but it would be improper to review the actual innocence claims or consider what was adjudicated here as a post-conviction petition. Well, let me stop you there, counsel. I mean, I don't think anybody would disagree that this is a procedural cluster, for lack of a better term. But if I'm correctly, when the fourth district, which originally sent this back, it said at the Crankle hearing, defendant noted that Roderick, and then it goes on, but basically sent it back to finish up on that Crankle hearing, correct? That's correct. So, I mean, call it post-conviction, call it what you might. The main focus at this hearing seemed to be on this ineffective assistance issue, things such as that, correct? Yes. I mean, there was some discussion of the actual innocence claim, but it was primarily on the Crankle issue, yes. And I would note as well, the state cited four additional cases, I believe, to this court that was not cited in the briefing and that I have not reviewed. I would like an opportunity to review those after the argument today and see if there's a need for turning to the actual merits of this case. The state had an opportunity to probe Kenesha Cox's reliability. It didn't do that during the evidentiary hearing. And the state is now arguing that maybe she's an accomplice to the murder here. There's no support for that in the record. The state had an opportunity to ask her questions about that. It chose not to. Dennis's conviction in this case, a finding that the process was not in error, should not be based on speculation that the state had an opportunity to dispel. They have made no attempt to question Kenesha Cox to see if there were any reliability issues here. As to the claim that this was trial strategy, again, I point this court to the King case, but I began my argument by noting that during his argument, counsel pointed out that there was no accounting of this 15-minute time span to the jury. It told the jury that Dennis would have been more lucky had there been evidence of where he was right after the shooting was, or at the time the shooting was committed. Defense counsel had that evidence and he elected not to Now, he said he had questions about Ms. Cox's reliability. In fact, the actual quote is he wasn't 100% sure of how reliable she would be, but he didn't explain why he had a concern about her reliability. Again, the state made no effort during the evidentiary hearing to probe that question. Dennis has not been given an opportunity to have his case properly evaluated by a jury. During its argument, the state again said it's a jury's determination to decide issues of credibility. While I understand the state would like to point to Kenesha Cox's misdemeanor conviction for attempted obstruction of justice, and we're still not even clear if that could be used, Colton Green, Johnny Taylor, and Demario Cunningham, I see my time has expired. May I conclude? Go right ahead. I allowed Mr. Atwood to go a little longer, so go right ahead. Okay, Colton Green, Johnny Taylor, and Demario Cunningham, between them, had nine felony convictions and one pending case. If Ms. Cox's credibility, if the state is correct and Ms. Cox's credibility can be undermined by a misdemeanor conviction, I would say that the state has just conceded that the balance of its evidence at trial should not have been considered as credible, given that most of its witnesses suffered from incredibly serious felony convictions. Dennis Davis deserves an opportunity to have the jury fully understand the evidence in his case, and he has not been offered that opportunity to this point as a result of counsel's ineffectiveness and the state's failure to disclose evidence that was helpful to his defense in its possession. So, for those reasons, we'd ask that Dennis Davis's conviction be reversed and his case be remanded for a new trial. Thank you, counsel. Before I talk about this procedural issue we're going to address here real quick, Justice McKinney or Justice Moore, do you have any final questions? No questions. All right, going back to counsel's request to have some time to respond or at least look at those cases cited by the state. I guess Mr. Atwood, and I'm trying to remember, did you cite all four cases during this argument so that Mr. Wilson has those sites to look at? That is correct. They're for Mr. Wilson and the court. We would have no objection to that. It was just in response to an argument he made in his reply brief. Okay. So, then, Mr. Wilson, how long do you think you would need to file some short supplemental brief or something of that nature for us? I have a few days where I'm going to be off late this week. Would it be okay for two weeks to allow me time to review that? I would give you at least 14 if not 21 days. You know, we're all busy. I mean, so I get it. I appreciate that. I would take your honor up on the 21 days then. Okay. And then, Mr. Atwood, do you think you would need to do anything additionally? I could, you know, depending on what his arguments are, address them. They're not necessarily cases that require a lot of analysis. It's mostly just procedural background establishing that is a common occurrence. Okay. I guess I would, if, because I want to be fair to both parties. Obviously, Mr. Atwood, I understand, citing those cases, I understand Mr. Wilson wanting to respond. But then again, I don't want to get into a lengthy procedural issue. But I would say, Mr. Atwood, once Mr. Wilson files that supplemental memo or brief, you know, if you could get something back short in 14 days. That would be easy. I could do it in 7 or 14, no problem. Okay. Probably should ask the clerk to issue a written order on that so we have it for our file. That was my next request from Madam Clerk. If she could do that for us, I would greatly appreciate it. Will do. Your Honor, if I may, if I review those cases and determine that no further briefing or, you know, motions are necessary, I'll make sure to advise the parties of that as soon as I can as well. Yeah, that would be great. You know, I mean, unless, you know, the rest of the panel thinks something different, an email to the clerk and Mr. Atwood, you know, would be sufficient, at least for my purposes. That way we know, you know, where we're going. Let me just inform the court nothing else is forthcoming. Yeah. Thank you, Your Honor. Well, with all that being said then, obviously, counsel, we will take the matter under advisement. We will issue an order in due course.